7059

## STOUFFER v. ERWIN.

1. EVIDENCE—NOTES.—LETTERS written by one alleged to be the attorney of the maker of a draft is not admissible against the holder to show he was not the owner at the date of the letters, nor would the contract between the maker and acceptor of the draft or evidence tending to show failure of consideration be admissible against the holder for value in absence of proof tending to show he was not a purchaser for value before maturity.

2. CHARGE.—Reading from the contract in evidence and commenting thereon in his charge, *held* here to be a charge on the facts.

3. NOTES—ISSUES.—In this case it was error to submit to jury failure of consideration in original contract, as there was evidence tending to show the holder of the draft bought the same before maturity without notice, and there was no evidence to the contrary.

4. IBID.—CHARGE—FRAUD.—Trial Judge erred here in refusing to charge jury there was no evidence of collusion or fraud.

5. IBID.—CHARGE.—It was error to refuse to charge in this case there was no evidence that plaintiff had any notice of any defense against the maker of the draft, and if jury believed he purchased the draft before maturity for value they should find for plaintiff.

Before Gary, J., Abbeville, October term, 1907. Reversed.

Action by J. C. Stouffer against A. M. Erwin. From judgment for defendant, plaintiff appeals on the following exceptions:

I. "Because his Honor erred in allowing the defendant to offer in evidence a letter purporting to have been written by R. P. Howell, dated at Iowa City, Iowa, January 26, 1906, addressed to A. M. Erwin, for the purpose of showing that at the date of that letter the United Jewelers Manufacturing Company was the owner of the drafts here sued on and not the plaintiff, when it is submitted that such testimony was purely hearsay, being the declaration of a third party as to a matter of issue in this case, and that it was prejudicial to the plaintiff, in that there was no other evidence produced tending to prove such contention. His Honor erred in overruling the objection of plaintiff's attorney, that such letter and testimony was hearsay and not binding upon the plaintiffs in this case.

II. "Because his Honor erred in holding that 'where a licensed attorney makes a demand on the defendant for the possession of a bill of exchange that he assigned to the attorney's clients, that the attorney is the representative of the client in this case and his communications are competent evidence. He is bound by the attorney.' It is submitted that it was incompetent to prove by the letter of R. P. Howell, an attorney for the United Jewelers Manufacturing Company, that the United Jewelers Manufacturing Company was the owner of the draft here sued on, and that the testimony as to the plaintiff was pure hearsay and incompetent.

III. "Because his Honor erred in allowing the defendant to offer in evidence letter of R. P. Howell, dated Iowa City, Iowa, January 26, 1906, addressed to defendant, wherein he states that he holds the said bills here sued on for the United Jewelers Manufacturing Company, and erred in allowing the defendant thereby to offer testimony that the

United Jewelers Manufacturing Company and not the plaintiff was the owner of the said bills. Such testimony as to the plaintiff is pure hearsay, the declarations of an attorney for another party not being competent and not being binding upon plaintiff in this case. It is submitted that his Honor erred in overruling the objection of the plaintiff to the introduction of the said letter, when he should have sustained the objection of the plaintiff that the statements of such letter were purely hearsay, and that a declaration of an attorney for the United Jewelers Manufacturing Company cannot be evidence here in this Court as against the plaintiff, who is a different party.

IV. "Because his Honor erred in allowing the defendant to offer in evidence the contract between himself and the United Jewelers Manufacturing Company for the purchase of jewelry, for which the drafts in this case were executed, when it is submitted that such testimony was incompetent, for the following reasons:

a. "It being admitted by the pleadings that these drafts were given in settlement of the amount claimed under the said contract, and there being no allegation that the said drafts were procured by fraud, it is submitted that when such drafts were executed in settlement for the amount claimed by the United Jewelers Manufacturing Company that the matter above became settled between the parties, and the defendant was estopped to go behind said drafts and show that they were without consideration, or that there was a failure of consideration.

b. "The proof being that the plaintiff was the owner and holder of said drafts for value, and that he purchased the same before maturity, it was incompetent to allow any testimony as to a defense which the defendant had against the original payees until defendant first offered testimony going to show that plaintiff was not a purchaser of said drafts before maturity for value.

c. "The testimony shows that the drafts in this case were executed by the defendant to the United Jewelers Manufacturing Company in settlement of a claim which they had against the defendant on account of the sale of jewelry, and there being no testimony that said drafts were executed or procured through fraud, the defendant was estopped to go behind said settlement, but the same was final between him and the United Jewelers Manufacturing Company, and all persons claiming under the said company.

V. "Because his Honor erred in allowing the defendant to testify that the jewelry which he purchased was not the kind called for in the contract offered in evidence, when it is submitted that such testimony was incompetent for the following reasons:

a. "The plaintiff, being in the possession of negotiable paper, had offered evidence that he was in possession of it as purchaser for value and without notice before maturity, and such testimony as to him was incompetent until defendant first offered some testimony going to show that he was not an innocent purchaser for value and before maturity.

b. "The pleadings show that the drafts here sued on were executed by the defendant in settlement for the jewelry purchased from the United Jewelers Manufacturing Company, and there is no allegation that such drafts were procured by fraud. It is submitted, therefore, that the defendant could not go behind the said settlement to show any want of consideration or failure of consideration in the original contract, but that the settlement which he made in executing the said drafts was final, and estopped him to go behind it.

c. "There was no testimony in this case that said drafts were procured from the defendant by fraud, but the testimony showed that they were executed by the defendant in settlement for an amount claimed by the United Jewelers Manufacturing Company; and it is submitted that, having given said drafts in settlement of said amount, the matter became settled between the parties, and the defendant could

not go behind the said settlement, when there was no evidence that said settlement was procured by fraud, to prove a want of, or failure of, consideration in the original transaction

VI. "Because his Honor erred in allowing the defendant to offer in evidence certain articles of jewelry claimed to have been bought from United Jewelers Manufacturing Company under the contract for the settlement of which the drafts in this case were given, when it is submitted that such testimony was incompetent for the following reasons:

a. "It being admitted by the pleadings that these drafts were given in settlement of the amount claimed under the said contract, and there being no allegation that the said drafts were procured by fraud, it is submitted that when such drafts were executed in settlement for the amount claimed by the United Jewelers Manufacturing Company that the matter became settled between the parties, and the defendant was estopped to go behind said drafts and show that they were without consideration, or that there was a failure of consideration.

b. "The proof being that the plaintiff was the owner and holder of said drafts for value, and that he purchased the same before maturity, it was incompetent to allow any testimony as to a defense which the defendant had against the original payees until the defendant first offered testimony going to show that plaintiff was not a purchaser of said drafts before maturity for value.

c. "The testimony shows that the drafts in this case were executed by the defendant to the United Jewelers Manufacturing Company in settlement of a claim which they had against the defendant on account of the sale of jewelry, and there being no testimony that said drafts were executed or procured through fraud, the defendant was estopped to go behind said settlement, but the same was final between him and the United Jewelers Manufacturing Company, and all persons claiming under the said company.

35—81

VII. "Because his Honor erred in allowing the defendant to offer testimony in this case as to the consideration of the said drafts, when it is submitted that such testimony was incompetent for the following reasons:

a. "The testimony of plaintiff showed that he was an innocent purchaser for value and before maturity of the drafts offered in evidence in this case, and there is no competent evidence to dispute it, therefore, such testimony as to plaintiff was incompetent.

b. "The said drafts, having been given in settlement of a preexisting claim held by the United Jewelers Manufacturing Company against defendant, and there being no allegation or proof that any such settlement by said drafts was procured by fraud, it is submitted that the execution of said drafts estopped the defendant to plead want of, or failure of, consideration in the original transaction, and that all matters of defense which existed as to the original transaction were waived by the execution of said drafts by defendant.

VIII. "Because his Honor erred in charging the jury as follows: 'That is a very catching guarantee. It is rather an unusual one—guarantee of profit. Listen to this: "The United Jewelers Manufacturing Company hereby guarantee that the purchaser's gross profits from the sale of jewelry bought under this order shall not be less than 50 per cent. of the amount of this order each year, for a period of two years from the date of invoice; and the said United Jewelers Manufacturing Company further agree and hold themselves bound at the end of each year, if the gross profits do not amount to 50 per cent. of the amount of this order for that year, to pay the purchaser a sufficient sum of money, by New York draft, to make up the deficiency, if there be any, or to buy back at the purchase price, at the expiration of this agreement, all goods remaining on hand at that time. The foregoing is conditional on the purchaser complying with all the conditions of this order at the time and in the manner set forth herein, and promptly meeting any obligation

entered into with us." You see that looks like it is a good,
fair transaction. Now, I had occasion to try a case over in
Edgefield, where there was a case of perfumery sold under
a similar agreement to this, and that case came up between
the original purchasers, and the merchant in that case
pleaded failure of consideration. When I looked at the
papers I was not impressed with his defense. Here was a
guarantee of one hundred per cent. in that case, and I did
not understand how the people could sell perfumery and
make such a guarantee as that. And I studied it out and
came to the conclusion, after a good deal of research on it,
that, in order to make his one hundred per cent., this was
the way it was accomplished: Say a case of perfumery,—
they would put it in bottles and label it, and the agreement
was that the merchant was to sell it at the price they fixed
on the bottles. They would have an ounce bottle, say, 25
cents or ten cents an ounce, and a two ounce bottle at 25
cents, but a four ounce bottle was six dollars and an eight
ounce bottle was ten dollars. So if the merchant, of course,
would sell six ounces at eight dollars, and eight ounces at
ten dollars, it was easy enough to make one hundred per
cent. on the transaction.' It is submitted that this charge
was erroneous, for the following reasons:

a. "It was a charge with respect to matters of fact in this
case contrary to the provisions of the Constitution of this
State prohibiting the Judge from charging with respect to
matters of fact.

b. "The said charge in effect stated to the jury that the
original contract between the defendant and the United Jew-
elers Manufacturing Company was impossible of perform-
ance, and, therefore, that there was a failure of considera-
tion, when it is submitted that that was a question for the
jury in this case, and that his Honor erred in so charging
the jury, the said charge being contrary to the provisions
of art. V, sec. 26 of the Constitution, forbidding Judges
from charging as to matter of fact.

IX. "Because his Honor erred in submitting to the jury the question of the want of, or the failure of, consideration as between the defendant and the United Jewelers Manufacturing Company, when the undisputed testimony showed that the plaintiff was the owner of the drafts here sued on, and that he was the purchaser of the same before maturity for value and without notice of any defense in favor of the defendant.

X. "Because his Honor erred in refusing to charge the jury in this case that a note or draft did not become due until the end of three days of grace; and erred in not charging the jury that if a party purchased a note during the three days of grace that he was entitled to the protection accorded a purchaser of a negotiable paper. It is submitted that such is the law applying to this case, and that it was prejudicial to the defendant not to so charge.

XI. "Because his Honor erred in refusing to charge the jury plaintiff's fifth request to charge, as follows: 'In this case there is no evidence of any collusion between plaintiff and the United Jewelers Manufacturing Company.' It is submitted that there was no such testimony, and that it was therefore erroneous in his Honor to refuse such charge.

XII. "Because his Honor erred in refusing to charge the jury plaintiff's sixth request: 'In this case there is no evidence that the plaintiff, J. C. Stouffer, had any notice of any defense which Mr. Erwin might have had to the payment of any of these drafts, and if the jury believe that the plaintiff purchased the same on November 7, 1905, for value, the verdict must be for the plaintiff.' It is submitted that in this case there was no such evidence, and that it was erroneous for his Honor to refuse the said request.

XIII. "Because his Honor erred in refusing a motion for a new trial in this case, when the undisputed testimony shows that plaintiff was a purchaser of the drafts here sued on for value and before maturity and without notice of any defense against them. It is submitted, therefore, that there

was no testimony in this case on which a verdict for the defendant could be based.

XIV. "Because his Honor erred in refusing the plaintiff's motion for a new trial on the ground that the undisputed testimony shows that the drafts in this case were executed by defendant in settlement of a preexisting indebtedness, and there being no allegation and no proof that the same were procured by fraud, that, therefore, the defendant was estopped to plead any defense to the said drafts which he had to the original transaction. It is submitted that the undisputed testimony showed that such drafts were executed by Erwin in settlement of a claim held against him by the United Jewelers Manufacturing Company, and in the absence of any allegation or evidence of fraud in procuring the said drafts Erwin waived any matter of defense he had as to the original transaction, and he was estopped to assert any defense in an action to collect the said drafts which he had as to the original transaction.

XV. "Because his Honor erred in refusing to grant plaintiff a motion for a new trial on the grounds, as stated by him, that the original contract of purchase between defendant and the United Jewelers Manufacturing Company was founded in fraud, when it is submitted that, even if such was the case, such evidence was incompetent against plaintiff, the undisputed testimony in this case showing that the plaintiff was a purchaser for value and without notice before maturity."

*Mr. Wm. P. Greene,* for appellant, cites: *Letters of Attorney Howell are mere hearsay:* 20 S. E. R., 790. *Possession of negotiable paper presumes purchase for value:* 12 S. C., 572. *Evidence as to contract between maker and acceptor not admissible:* 23 S. C., 239. *Extension of time is consideration for draft:* 13 S. C., 336. *Acceptance of draft settled all question of liability:* 58 S. C., 59.

*Mr. Wm. N. Graydon,* contra. Oral argument.

November 16, 1908.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.  The above stated case came on for trial at the October term, 1907, of the Court of Common Pleas for Abbeville county, before his Honor, Ernest Gary, and a jury.  The following is the complaint:

"The complaint of the plaintiff above named respectfully shows:

I. "That on the 5th day of September, 1905, United Jewelers Manufacturing Company made their bill of exchange, in writing, dated on that day, directed to the defendant, A. M. Erwin, and thereby required the said defendant to pay to the order of the said United Jewelers Manufacturing Company eighteen and 75-100 dollars, two months after the said date, for value received.

II. "That thereupon, on the          day of September, 1905, at Antreville, the said defendant, upon sight, accepted the said bill.

III. "That thereafter, and before the maturity of the said bill, the same was for value received, duly assigned and transferred to the plaintiff, J. C. Stouffer; that no part thereof has been paid, and the plaintiff is still the owner and holder thereof."

The second cause of action is exactly the same as the first, except the maturity of the draft, which was four months after date.

The third cause of action is the same, except the maturity, which was six months after date.

The fourth cause of action is exactly as the foregoing, except the maturity was eight months after date.

The defendant, answering the complaint, alleges:

I. "That he admits the making and acceptance of the four bills of exchange mentioned in the said complaint.  That he denies each and every other allegation of the complaint herein, except that no part of said bills have been paid.

"For a defense to the whole cause of action alleged and set forth in the complaint, this defendant alleges:

II. "That the consideration of the said four bills of exchange was a contract made by the defendant and the United Jewelry Manufacturing Company, by which said company agreed to sell, and did sell, to the defendant a lot of jewelry, represented by said manufacturing company to be of sterling silver, rolled goldplate, gold front and gold filled, and oxidized finished goods.

III. "That the said goods or jewelry failed to come up to the guarantee and warranty of said manufacturing company, and said goods were nothing but brass, of the cheapest quality, and absolutely worthless to this defendant or to any one else. That the defendant sold some of the goods, but they were returned to the defendant, and defendant had to return to the purchaser the price paid him for said goods

IV. "That said goods were not as represented by the salesman selling the same, and not such goods as called for in the contract, and the same were and are utterly worthless.

"For a further defense to said alleged cause of action, the defendant alleges:

V. "That the said J. C. Stouffer, the plaintiff herein, is not the owner and holder of the said bills of exchange, but is simply put forward by the United Jewelry Manufacturing Company as a blind to prevent the defendant from pleading failure and want of consideration, and to try to shut off the defense of the defendant by claiming that said Stouffer is the holder of negotiable paper passed to him before it was due, when, as a matter of fact, said bills of exchange were never turned over to the plaintiff until after they were due, and were then turned over to him solely for the purpose of shutting out this defendant's defense to said bills of exchange."

Testimony was offered on both sides, and, after the charge of his Honor, the jury rendered a verdict in favor of the defendant. A motion was made for a new trial, which was

refused by the presiding Judge. The plaintiff now appeals to this Court upon fifteen exceptions and subdivisions, which we will consider.

Let the exceptions be reported.

The first, second and third exceptions, relating to letters written by R. P. Howell, an attorney, and in the name of the United Jewelry Manufacturing Company, must be sustained, for the reason that a declaration of an attorney for the United Jewelers Manufacturing Company cannot be evidenced against this plaintiff, who is a different party.

The fourth, fifth and sixth exceptions will be considered together, relating, as they do, to the drafts.

The drafts were executed in settlement of the amount claimed by the United Jewelers Manufacturing Company, and the evidence tended to show that J. C. Stouffer purchased them before maturity; it was incompetent to allow any testimony which the defendant had against the original payees until the defendant first offered testimony going to show that plaintiff was not a purchaser of said drafts before maturity for value. These exceptions must be sustained.

The seventh exception must be sustained, for the reasons set forth in the foregoing exceptions.

The eighth exception is sustained; for his Honor erred in using the contract which was introduced in the testimony, it being in violation of art. V, sec. 26 of the Constitution, forbidding Judges from charging as to matters of fact.

Ninth. We think his Honor erred in submitting to the jury the question of want of, or the failure of, consideration as between the defendant and the United Jewelers Manufacturing Company, when the testimony tended to show that the plaintiff was the holder and owner of the drafts, and was a purchaser for value before maturity without notice, and there was no testimony to the

contrary; hence, plaintiff had nothing to do with the jewelry company. This exception is sustained.

The tenth exception must be overruled; for a reference to his Honor's charge will show that it did contain, in substance, the basis of this ground of appeal.

Eleventh and Twelfth. His Honor should have charged both the requests here pointed out; we have already held that there was no evidence of any collusion between the plaintiff and the jewelry company, and also that the testimony tended to show, without contradiction, that the plaintiff purchased the drafts before maturity. These exceptions are sustained.

The thirteenth, fourteenth and fifteenth exceptions are sustained, for the reason set forth already.

The judgment of this Court is that the judgment of the Circuit Court be reversed and a new trial granted.

MR. JUSTICE GARY *dissents.*

MR. JUSTICE WOODS, *concurring.* It is obvious from the pleadings and issue referred to in the opinion of the Chief Justice that the appeal turns on the question whether the letter written by Howell to the defendant was admissible in evidence. If it was admissible, then there was evidence for the consideration of the jury on the issue whether the alleged indorsement to the plaintiff before maturity was pretensive; and this would open for the defendant the other issue, made by the answer, of failure of consideration, and make the evidence on that issue competent. Howell testified, on behalf of plaintiff, that when these letters were written he held the drafts for collection, as attorney for Stouffer and not for the United Jewelers Manufacturing Company; that the letters were written by a clerk in his office, who made the mistake of saying in them that the drafts were held for the United Jewelers Manufacturing

Company. If Howell be regarded as attorney of the United Jewelers Manufacturing Company, indorser, then the declarations contained in the letters written in his office, and signed by him, could not be binding on the plaintiff, as indorsee. If he be regarded the attorney for the plaintiff when the letters were written, as he testified he was, the letters were still not admissible, because it was not within the scope of his power, as agent, to repudiate his client's ownership of the drafts and bind him by admissions that the drafts were owned by another.