## 9295

### TRIMBLE v. CARLISLE.

#### (88 S. E. 28.)

1. BILLS AND NOTES—TIMES OF PAYMENT.—Monthly payments on a note for $1,000, dated November 23, 1909, reciting: "Beginning July 23, 1910, * * * I promise to pay * * * $50 per month for twenty months. Payments to be made on the 23d of each month after date of this note"—begin July 23, 1910.

2. EVIDENCE — COMMERCIAL REPORTS. — A report of Dun & Co. is a declaration, and incompetent to prove the value of a corporation's stock.

3. EVIDENCE—VALUE OF CORPORATE STOCK.—Testimony that at the time of trial, stock of a corporation was worthless, is not proof that it was worthless when defendant bought stock thereof, and gave his note therefor.

4. BILLS AND NOTES—ACTION — FRAUD OF PAYEE — EVIDENCE. — Neither what H., unknown to defendant when he bought stock of H. and in payment executed the notes sued on by their transferee, had told others about the stock, nor the price at which he had sold some of it to others, nor what statements H. made to W. when H. sent W. to

get money from defendant, nor what defendant said to a bank clerk when he called to collect the notes, is competent on the issue of H. having made fraudulent representations as to the value when he sold the stock to defendant.

5. EVIDENCE—CHARACTER.—Evidence of the reputation of H. for truth and veracity, he not being a witness or a party, is not competent to show that in selling to defendant stock, for the price of which the note sued on was given, he committed a fraud.

6. EVIDENCE—CHARACTER.—The reputation of H. for truth and veracity is not competent to answer the testimony of plaintiff, suing on notes given by defendant to H., that H. was regarded as a man of truth and veracity, the relevance of plaintiff's testimony not being to prove H.'s character, but to prove that plaintiff had confidence in him, and had therefore no reason to suspect the notes were other than they seemed to be, valid obligations of defendant.

Before SHIPP, J., Greenville, September, 1914. Affirmed.

Action by J. G. Trimble against J. P. Carlisle. Judgment for plaintiff, and defendant appeals. Affirmed.

The one of the notes sued on, which provided for monthly payments, is as follows:

$1,000.00                    Greenville, S. C., Nov. 23, 1909.

Beginning July 23, 1910, after date I promise to pay to the order of William V. Holley fifty and no 100 dollars per month for twenty months. Payments to be made on the 23d of each month after date of this note. Failure to meet any one payment upon date due, all payments become due and payable, with interest after date of maturity.

                                        J. P. Carlisle.

*Messrs. Adam C. Welborn* and *L. O. Patterson,* for appellant, submit: *The chief question presented by the exceptions is whether only one reasonable inference could have been drawn from the evidence. If so, the presiding Judge was not in error in directing a verdict in favor of the plaintiff. If more than one reasonable inference could have been drawn, the case should have been submitted to the jury:*

91 S. C. 455; 77 Vt. 189; 59 Atl. 827; 63 Minn. 468; 65
N. W. 924; 123 N. Y. 191; 25 N. E. 402; 10 L. R. A. 676;
54 Vt. 182; 41 Am. Rep. 841; 43 Vt. 125; 5 Am. Rep. 265;
22 S. D. 365; 117 N. W. 1033; 29 L. R. A. (N. S.) 351;
125 Ind. 269; 25 N. E. 281; 15 S. D. 444; 90 N. W. 856;
156 Ind. 66; 59 N. E. 281; 83 Am. St. Rep. 150; 25 Nev.
411; 62 Pac. 1; 44 Mich. 344; 6 N. W. 823; 39 Pac. 3;
6 N. D. 417; 71 N. W. 550; 36 N. E. 551; 120 Ind. 301;
22 N. E. 306. *Right to attack reputation of witness for
truth and veracity:* 1 Wigmore Ev., secs. 64 and 68.

*Messrs. Cothran, Dean & Cothran,* for respondent, cite:
91 S. C. 455, 458; 8 Rich. L. 470; 8 S. C. 290; 12 S. C. 272;
28 S. C. 149; 78 S. C. 531; 97 S. C. 52.

March 2, 1916.

The opinion of the Court was delivered by MR. JUSTICE
GAGE.

The plaintiff sued the defendant on three notes aggre-
gating some $1,500 and alleged to be negotiable, and to
have been bought by plaintiff before maturity for value
and in good faith. The defendant admitted the execution
of the notes, but alleged that they had been given by him
without value, and by reason of the fraud of the payee,
William V. Holley. At a trial had before the instant one,
a jury failed to agree. At the instant trial the Court
directed a verdict for the plaintiff, and the defendant has
appealed.

The plaintiff is a gentleman past 90 years of age when
he testified, and resides at Mt. Sterling, Ky., and is director
of a bank there. The payee, Holley, married the plaintiff's
daughter more than 20 years ago, and also resides in Ken-
tucky. The defendant is a dentist, and resides at Green-
ville in this State.

The note was made under these circumstances: In the
fall of 1909 Holley visited Greenville as a promoter of a

corporation called the American Exploration & Development Company, organized under the laws of the then territory of Arizona, with an authorized capital stock of $1,000,000, of which $900,000 was common, and $100,000 seven per cent. cumulative preferred. The corporation spread over the Union. The head offices and officers were in the city of New York. The directors were scattered from Arizona, by Hickory Grove, to New York; and one of them was the defendant. The company's business is thus described:

"The purpose of the company is described as that of agents and brokers in the purchase and sale of mining, industrial and development propositions, and that a business formerly conducted by William V. Holley in securing and selling options and finding a market for the products of companies financed, will be continued. It is claimed that the company's functions are confined to the general lines of organizing propositions, but does not include the sale of the securities thereof."

The defendant took 1,000 shares, 7 per cent. cumulative preferred stock, with bonus 2,000 shares of common stock. So the defendant helped to set this trap to catch the unwary, of whom he claims to be one. Had he been an outsider, his present unfortunate cries might find a more willing ear.

There are 16 exceptions; but it was stated at the bar by the defendant's counsel, in a candid and lucid argument, that the case is governed by *Bank* v. *Stackhouse,* 91 S. C. 457, 74 S. E. 977, 40 L. R. A. (N. S.) 454, and the only issue here is: Did the trial Court rightly apply the law of that case to the instant case?

The note is plainly negotiable; it will be reported. The only feature about it which suggests the contrary is the date of the maturities. The appellant contends that by some of the terms of the note, payments were to be made on the 23d of each month after the date of the note, which was November 23, 1909; and by

other terms of the note, beginning July 23, 1910, payments were to be made monthly. But the two provisions read together exact monthly payments on the 23d day, to be made after the date of the note, and to commence on July 23d. The memorandum at the left bottom end of the note makes that plain.

The Stackhouse case holds plainly: (1) That the possession and presentation of a negotiable note raises the presumption that the holder is entitled to payment; (2) that if the defendant maker then offers testimony tending to prove that the paper was secured from him by the fraud of the payee (3) then the holder must offer testimony tending to show that he acquired the paper in good faith, for value, before maturity, and with no knowledge, direct or by circumstance, of the infirmity inherent in the paper. If there be testimony on the last two issues, and of such a character as to call for the pondering of it, then the determination of the truth of the issues must go to a jury. We think the testimony on those issues here is not nearly so plausible as it was in the Stackhouse case.

The only fraud attempted to be proven here is simply this: Holley, the president of a foreign corporation, of doubtful character on its face, induced the defendant to become a director therein, and told the defendant that the company had $1,000,000 capital stock all paid in, and the stock was worth $1 per share, which was par; that it would pay 25 to 30 per cent.; that the defendant relied on this and believed it to be true; that the statement turned out to be false, for the proof of which defendant relied on a commercial report made to him by R. G. Dun & Co.

If the defendant really believed the incredible representations made to him by Holley, then they had not proven to be false. The report of Dun & Co. was clearly a declaration, and incompetent as evidence to prove a fact. It is true one witness, Earnhardt, swore that at the time he testi-

fied the stock was worthless, because as executor of Wilcox's estate, which was a stockholder, the witness had received no notice of a stockholders' meeting. But that does not nearly show that when the defendant subscribed for it and made the notes the stock was worthless.

The defendant offered testimony as to what Holley had told others about the stock, unknown to the defendant when he made the notes; as to what price Holley sold the stock to others than defendant, unknown to defendant when he made the notes; as to what statements Holley made to one Willis when Holley sent witness to get money from defendant; as to declarations of the defendant to a clerk when a bank clerk called to collect the notes. All this testimony was patently incompetent, and was rightly excluded. There was in fact no proof that the representation made to the director, Carlisle, by the president, Holley, was untrue, though the defendant might have known that they were false, had he exercised ordinary judgment. Notwithstanding the defendant's failure to prove fraud, the plaintiff nevertheless testified to his good faith, his lack of knowledge, his purchase before maturity, and for value. There is nothing in the case to impeach the testimony of this venerable man.

Only one other issue made by the appeal needs to be noted. A witness for the defense named Allen was asked about the general reputation of Holley for truth and veracity, the inference being, the proof of a man's reputation for those attributes tends to show he committed a particular fraudulent act. Whether Holley had a particular intent is not to be proven by showing that he is a bad man. If A. be charged with larceny of a hog, it would not be competent to prove that A. has a bad reputation for honesty, and therefore he stole the hog.

We think appellant's counsel concede so much, but they contend that the testimony was competent to answer the testimony of the plaintiff that Holley was regarded as a

man of truth and veracity. But the relevancy of that testimony was not to prove Holley's character, but to prove that the plaintiff had confidence in him, and had therefore no reason to suspect the notes were other than what they seemed to be—the valid obligation of the defendant.

Holley was not a witness, he is not a party, and whether he be of good or bad reputation does not tend to prove he committed a fraud. We quote again what was quoted in *Bank* v. *Stackhouse*:

"These securities (commercial negotiable notes) are found in the channels of commerce everywhere, and their volume is constantly increasing. They represent a large part of the wealth of the commercial world. The interest of the community at large in the subject is deep rooted and wide branching. It ramifies in every direction, and its fruits enter daily into the affairs of persons in all conditions of life."

Indeed, he who signs and issues a negotiable note has loosed into the channels of commerce a silver trout, which wholly belongs to the angler who make take it, according to the laws of the stream.

Our judgment is that the judgment of the Circuit Court must be affirmed; it is so ordered.