13278

MORRISON *ET AL.* v. UNION INDEMNITY CO.

(161 S. E., 418)

138

*Messrs. Huger, Wilbur, Miller & Mouzon,* for appellant,

*Mr. Nath. B. Barnwell* and *William McG. Morrison,* for respondents,

November 17, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action, commenced October 17, 1929, upon a contractor's bond, dated June 4, 1928, signed by the defendant Powers, the contractor, as principal, and the defendant iUnion Indemnity Company, as surety, for faithful performance by the contractor of a contract entered into between him and the plaintiffs, trustees of school district No. 1, McClellanville, S. C., providing for certain alterations of and additions to the schoolhouse, dated May 22, 1928, at the contract price of $10,960.00, the bond being in the sum of $5,480.00, the date of completion being fixed at September 15, 1928.

The plaintiffs alleged in the complaint an abandonment of the contract by the contractor and a completion of it by them at a cost of $3,641.80 in excess of the contract price, for which they demanded judgment.

The defendant company answered admitting the building contract, the bond, the default of Powers, and the completion of the work by the trustees. The answer further alleged that, subsequent to Powers' abandonment of the work, the

plaintiffs and the defendant made a written contract whereby plaintiffs assumed the completion of the work and discharged the surety from further responsibility. therefor, the surety agreeing to save the plaintiffs harmless from pecuniary loss through claims arising out of work done by Powers, provided they were such claims as the surety was already liable for under the bond. The answer alleged that the surety had performed all the obligations imposed on it by the bond as modified by said contract.

To this answer the plaintiffs replied, admitting the execution of the contract set up in the answer, but alleging that it was void because procured by the fraud of the bond company; Vetsch, a representative of the company, went to McClellanville and met with the plaintiffs; that he proposed that his company pay all existing bills for material and the like amounting to $2,528.41 and that the plaintiffs assume the completion of the work and free the company from further responsibility; that this proposal was agreed to by plaintiffs; that Vetsch fraudulently procured the drafting of the contract attached to the answer of the company, which differed radically from the agreement actually made; that Vetsch then sought out the plaintiffs separately and procured their signatures to the contract by representing to them that it stated the agreement already made, and that it had been approved by the attorney for the county superintendent of education; that the company subsequently repudiated its agreement to pay the bills amounting to $2,528.41.

The case was tried before his Honor, Judge Mauldin, February, 1931, the trial resulting in a verdict in favor of the plaintiffs for $2,528.41. From the judgment entered upon this verdict, the defendant bond company has appealed.

The condition of the bond was thus stated: "The condition of the foregoing obligation is such that, if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the

said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law; provided, however, that this bond is issued subject to the following conditions and provisions: * * * That in case of such default on the part of the principal the surety shall have the right, if it so desires, to assume and complete or procure the completion of said contract, and shall be subrogated and entitled to all the rights and properties of the principal arising out of the said contract and otherwise, including all securities and indemnities theretofore received by the obligee, and all deferred payments, retained percentages and credits, due to the principal at the time of such default, or to become due thereafter by the terms and conditions of the contract. * * * That in no event shall the surety be liable to another than the obligee, or for a greater sum than the penalty of this bond, or be subject to any suit, action or other proceeding thereon that is instituted later than the 15th day of September, A. D. 1928. * * * "

Shortly after the execution and delivery of the bond (dated June 4, 1928) Powers, the contractor, entered upon the performance of the contract. On or about September 11th, four days before the date fixed for its completion, Powers abandoned the contract, and on that day the trustees notified the bond company of the abandonment, and called upon it, "as surety to have this contract completed and the building delivered to our board without further delay," expressing the opinion that, with the funds in their hands applicable to the contract, the work could be completed with very little cost to the bonding company. (It will be observed, in passing, that this demand was not justified by the terms of the bond, which gave the bonding company the option, "if it so desires, to assume and complete or procure the completion of said contract.")

The bonding company did not respond to the suggestion of the trustees that it take over and complete the building,

and on October 1st Benson, the architect in charge of the building, wrote to the bonding company on behalf of the trustees, reiterating the demand of the trustees. He appears to have been under the same misapprehension that had seized the trustees as is shown by this paragraph in his letter: "In the circumstances you know that the board is without power or authority to make any move at all towards completing the building; the matter is up to the surety to complete the work, or to authorize them to have the building completed, charging to your company what amount over and above the contract price that may be required to do this."

He suggested a conference between the bond company and the trustees with a view of arriving at an understanding. Accordingly, on October 8th, after the work had been at a standstill for over three weeks, a meeting was arranged, attended by Vetsch, as representative of the bond company, McCarley, the county superintendent of education, Benson, the architect in charge, Morrison, chairman of the board of trustees, and Graham, secretary of the board. (It appears that Lofton, the third member of the board, did not attend.)

It seems very sure that an agreement was reached among the persons who attended that meeting, but exactly what it was, is a matter of controversy. The main objects, however, appear to have been attained; that the bond company would waive its option to take over and complete the building; that the trustees should take over and complete the building with the funds on hand, and be relieved of any liability which they might have incurred upon outstanding claims of persons who had furnished material and supplies to Powers prior to his abandonment of the contract, amounting to $2,528.41; and that the bond company should be released from further liability upon the bond.

The real point of attrition between the parties is whether the agreement claimed to have been made on October 8th altered the terms of the bond (which limited the obligation of the bond company to an indemnity to the trustees alone),

and imposed upon it an obligation to pay the outstanding claims against Powers for items incurred prior to his abandonment of the contract, claims which the trustees had not paid, and which they were contesting in the Courts, in actions brought against them by the holders (at least some of them), upon their claims.

There can be no doubt but that the bond was an indemnity undertaking; it specifically so provides; and it contains this provision: "That in no event shall the surety be liable to other than the obligee. * * * "

It seems clear, then, that a contract which purports to change the existing obligation of the bond must be established, certainly by the preponderance of the evidence, the burden of which is upon the trustees.

They sought to sustain their contention by the introduction of the minutes of a meeting of the board held on the day of the conference, October 8th, and by the testimony of Morrison, Graham (members of the board), and McCarley, superintendent of education, who testified to the effect that the minutes correctly set forth the agreement that was entered into at that time.

The minutes are here reproduced: "Meeting of Board of Trustees, October 8, 1928. Meeting was called to order by chairman, Present R. L. Morrison, chairman; T. W. Graham, clerk, also Mr. J. B. Benson, architect and Mr. H. H. McCarley, and Mr. Vetsch, who represented the bonding Co. Mr. Morrison requested Mr. Benson to state object of meeting. He, Mr. Benson, stated condition of work accomplished on building by E. Powers, contractor, and what was unfinished, also that bondsmen and Mr. Powers had been notified and requested to act and nothing had been done. After some discussion, Mr. Benson with approval of Trustees made Mr. Vetsch (agt) the following proposition— the Bonding Co., pay outstanding bills against the building amounting to Twenty-five Hundred Twenty-eight and

41/100 Dollars ($2,528.41) and the trustees would take balance left on contract and finish building, this being possible by using a lot of mill-work (second-hand), on hand which otherwise would not be allowed. This offer was accepted by Mr. Vetsch, agent and said his company would officially notify us of its acceptance, etc. Upon receipt of this acceptance and check to pay bills ($2,528.41) the trustees agree to release the Bonding Co. of all obligations. The board officially thanked Mr. Vetsch for the fair way he handled the matter. Mr. Vetsch assured the trustees it would be all right to take over the work at once, this being necessary on account of openings in building which made it unfit in cold or rainy weather. No further business, meeting adjourned."

Objection was interposed by the defendant to the introduction of the minutes, but, before considering these objections, it seems expedient to determine whether, if admissible, they establish an enforceable agreement:

It appears from the recitals that Benson, the architect, with the approval of the trustees, made the proposition to Vetsch, representing the bond company, that the bond company would pay the outstanding bills against the building, amounting to $2,258.41; that the trustees would take over the completion of the work, paying for it out of the unexpended funds on hand; and then appears this statement: "This offer was accepted by Mr. Vetsch, agent and said his company would officially notify us of its acceptance, etc. Upon receipt of this acceptance and check to pay bills ($2,528.41) the trustees agree to release the Bonding Co., of all obligations."

The minutes do not disclose any resolution by the board approving the proposition by Benson and its acceptance by Vetsch. Furthermore, they show that the acceptance by Vetsch of Benson's proposition was conditioned upon the approval by the bond company, of which there is no evidence.

We do not think, therefore, that the minutes disclose
■ an enforceable agreement, binding the bond company
to an alteration of the specific terms of the bond
which were simply to indemnify the trustees from any loss
incurred by them, and to be responsible only to the trustees.
There was no reason for the bond company to assume the
outstanding bills against Powers which had not been paid
by the trustees and not even assumed by them; on the con-
trary, they were being contested by the trustees in the Courts.

These conclusions render it unnecessary to consider the
question much discussed in the briefs, of the admissibility
of the minutes as evidence. The testimony of Morrison,
Graham, and McCarley add nothing to the recitals of the
minutes; in fact, their testimony is based entirely upon the
minutes.

Subsequent development shed much light upon what was
really agreed upon by the parties at the conference of Oc-
tober 8th. There is a great deal in the position of the re-
spondents that the alleged subsequent agreement of October
11th (three days later) cannot be considered as a formal,
corporate act of the board of trustees. See 24 R. C. L., 578,
35 Cyc., 902; *Windham v. School District,* 143 S. C., 511,
141 S. E., 896.

This principle, however, does not conflict with the admis-
sibility of the paper as expressing the individual construction
placed by the signatories, upon the agreement of October
8th, in contradiction of their oral testimony.

On October 11th, Benson, the architect, who had made the
proposition referred to in the minutes of the meeting of Oc-
tober 8th, McCarley, the superintendent of education, and
Vetsch, the representative of the bond company, who were
also present at that conference, met at the office of G. L. B.
Rivers, Esq., who had been representing McCarley as attor-
ney, for the purpose of having drafted an agreement in con-
formity with the agreement at the conference of October
8th. Benson was most active in giving Rivers the details of

the agreement proposed to be drawn up; McCarley and Vetsch also participated in the conference at which the matters at issue were thoroughly discussed, and, as Rivers testified, the writing was prepared in exact conformity with their statements. Not a word was communicated to Rivers suggesting an agreement on the part of the bond company to pay the outstanding claims against Powers, in conflict with the terms of the bond. The paper was carefully phrased, read over, discussed by all present, and completed. It is strange that neither Benson, who was the moving, active spirit in the matter, nor McCarley, the superintendent of education, interposed the slightest objection to the terms and conditions of the paper, which was handed to them for execution by the trustees.

It specifically referred to the resolution adopted at the meeting of October 8th: " * * * That the said Board would assume the completion of the work called for by the said contract if the party of the second part would save it harmless from claims arising out of the work already done by the said E. Powers under the said contract, and the officers of the Board of Trustees were authorized to execute any agreement necessary to carry the said resolution into effect."

It provided for a waiver by the bond company of its option to complete the contract and a release by the trustees of any demand upon the bond company for the expense of completing the contract by the trustees.

It also contained the following stipulations:

"And the party of the second part, in consideration of the assumption by the party of the first part of the completion of the said contract, has covenanted and agreed and does hereby covenant and agree with the party of the first part, and their successors, to hold the party of the first part, and their successors, harmless from any pecuniary loss resulting from claims filed, or to be filed, by any person or persons for labor, material or other matters or things arising out of the

work done by the said E. Powers in prosecution of said contract up to and including the time when the said Powers defaulted in the performance thereof, it being, however, the express understanding and agreement of the parties that the party of the second part shall not by this agreement be held in any way to extend the liability imposed upon it by the bond above referred to or to assume liability for any matters or things for which it was not liable under the terms of the said bond, this agreement on the part of the party of the second part being merely intended to limit the liability of the party of the second part to claims arising out of the work done by the said Powers under the said contract and to exclude all claims arising during the subsequent prosecution of the work by the party of the first part. And the party of the second part, its successors and assigns, reserves the right to contest any or all claims arising out of work done by the said Powers upon any grounds that may seem proper to it or them. And the party of the second part further covenants and agrees to defend any actions which may be brought against the party of the first part arising out of any claims, matters or things the liability for which the party of the second part has assumed under this agreement and to save the party of the first part from all cost and expense in connection with the defense of such actions.

"And the party of the second part further agrees that the party of the first part shall have the right to set aside and hold out of the amount of the original contract price of the said work now remaining unexpended by it a sum sufficient to pay claims now duly filed and hereafter to be filed for labor or materials or other matters arising out of the work 'done by E. Powers, and that the party of the second part will furnish to the party of the first part, as the same may be needed for the completion of the said work, funds up to the amount so held by the party of the first part; but the party of the first part hereby agrees that it will not pay any claims which have been filed, or which may hereafter be filed,

without the consent of the party of the second part, or the order of a Court of competent jurisdiction, and will hold the funds set aside by it as aforesaid until the party of the second part approves the payment of such claims, or a Court of competent jurisdiction orders their payment. Provided, however, and the party of the first part hereby agrees, that if and when any one or more of said claims for the payment of which funds have been reserved by the party of the first part and advances made by the party of the second part as aforesaid have been declared by a Court of competent jurisdiction not to be valid as against the party of the first part, or the building herein referred to, or the party of the first part has been otherwise satisfied of the invalidity of such claim or claims, then the party of the first part will forthwith repay to the party of the second part out of any amount advanced by it as aforesaid the amount of such claim or claims."

Bearing upon the respective contentions of the parties, there is little difference between them : Both sides agree that the bond company agreed to protect the trustees from claims against Powers for items of expense incurred by him prior to his abandonment of the contract; the trustees contend that the bond company assumed an absolute obligation to pay them; the bond company contends that it agreed to do only what the bond required it to do, to pay these outstanding claims only in the event that they should be established as valid claims against the trustees; the language of the minutes confirms the construction contended for by the bond company; it is not to pay these claims absolutely, but to "pay outstanding bills against the building"; that is, such claims as might be held to be liens upon the building which the trustees would be obliged to relieve. This the writing of Oct. 11th made the amplest provision for. The trustees were in such great doubt as to their liability for these claims that they were contesting them in the Courts and wanted ample protection against them in case they should lose; the bond

company never questioned its liability for them in the event that they should be established as valid claims against the trustees, or what was the same thing against the building.

The paper was then presented separately to the three trustees, and was signed without objection by each of them. They claim now to have signed it by reason of the false and fraudulent representation of the bond company that it expressed the terms of the agreement evidenced by the minutes of the October 8th meeting. It was presented to them by their own agent, Benson, the architect, who had been the moving spirit in the matter. It is inconceivable that he should have misrepresented the condition of affairs.

Not only this, but it appears that on November 15th the bond company transmitted to its attorney in Charleston a check for $2,528.41, stated to be an advance as per the agreement of October 11th. The attorney transmitted it to the board of trustees with a receipt for them to execute. They complied, and returned the receipt. It was in these words:

"McClellanville, S. C., Nov. 28, 1928.

"The undersigned, the Board of Trustees, School District No. 1, McClellanville, S. C., hereby acknowledge to have received from Union Indemnity Company, Twenty-five Hundred Twenty-eight and Forty-one ($2,528.41) Dollars, being money advanced by Union Indemnity Company to us in accordance with the terms of an agreement in writing between us and the said Union Indemnity Company, dated October 17, (11th?) 1928, which money so advanced is to be held and used by us in accordance with the terms of said agreement, to wit:

"We have set aside and hold out of the amount of the contract price of alterations and additions to have been made to the school building at McClellanville by E. Powers, contractor, the sum of Twenty-five Hundred Twenty-eight and Forty-one ($2,528.41) Dollars, being the amount of claims filed for labor, materials or other matters arising out of the work done on said contract by E. Powers prior to his aban-

donment thereof. The claims which have now been filed are as follows:

| | |
|---|---:|
| Atlantic Coast Lumber Company | $1,128.43 |
| Southern Mercantile Company | 183.50 |
| Berry Brick Works | 145.60 |
| Carolina Portland Cement Company | 35.00 |
| F. W. Ford | 40.00 |
| T. D. Smith | 207.96 |
| Launch St. Matthews | 31.00 |
| B. W. Jayroe | 348.72 |
| John H. Graham | 85.18 |
| S. M. Parker Lumber Company | 266.70 |
| Cameron-Barkley Company | 56.32 |

"We will not pay any of such claims or any claims hereafter filed arising out of the work done by E. Powers without the written consent of the Union Indemnity Company or the order of a Court of competent jurisdiction. If and when any one or more of such claims have been declared by a Court of competent jurisdiction not to be valid as against us or the said school building, or when we have been otherwise satisfied of the invalidity of such claim or claims, we will forthwith repay to Union Indemnity Company out of the amount so held by us the amount of such claim or claims.

"R. L. MORRISON,
"J. A. LOFTON,
"T. W. GRAHAM,
"Board of Trustees, School District No. 1,
McClellanville, S. C."

It is thus seen that the trustees again recognized the agreement of October 11th as embodying the terms of the agreement of October 8th.

The check which also stated that it was on account of the advance agreed to be made in the agreement of October 11th was indorsed by Graham, secretary of the board, who indorsed it to the county treasurer; he indorsed it, cashed it,

and placed the proceeds to the credit of the board. The trustees, it appears, have not used the proceeds of the check, which, of course, is of no concern to the bond company. They certainly have not returned the check. The paper dated October 11th, the receipt dated November 28th, and the check dated November 15th, all show that the check for $2,528.41 was transmitted to the board to be used in the payment of items for the expense of completing the contract; a corresponding sum of the balance of funds in the hands of the board to be held out to reimburse the bond company for its advance in the event that it should be determined that the board was not liable to the claimants whose items were due them from Powers for expense incurred prior to his abandonment of the contract.

If the foregoing conclusion should be sustained, that the minutes of the meeting of October 8th do not present evidence of an enforceable contract, altering the terms of the bond, it would be unnecessary to consider the effect of the alleged agreement of October 11th, the receipt of the board for the $2,528.41, and the check itself; the board under these circumstances would be remitted to the terms of the bond which obligate the bond company to indemnify the board from any loss it may have sustained by reason of the breach of the contract by Powers.

In that event it seems clear that the board has offered no evidence entitling it to recover anything.

As has been recently held by this Court in the case of *Piper v. Casualty Company,* 157 S. C., 106, 154 S. E., 106, 108, reaffirmed in the case of *Benn v. Coach Co.* 162 S. C., 44, 160 S. E., 135, filed September 1, 1931: "The difference between a contract of indemnity and one to pay legal liabilities is that upon the former an action cannot be brought and a recovery had until the liability is discharged; whereas upon the latter the cause of action is complete when the liability attaches."

The bond is one of indemnity, as clearly appears upon its face, see condition above quoted. So far as the claims filed, amounting to $2,528.41, are concerned, they are at most a possible liability, not even established as that, in fact, denied by the board and contested. It is not pretended that they have been paid by the board. They cannot therefore be considered a loss actually sustained, for which only the bond provided indemnity.

In the recent case of *Crum et ux. v. Jenkins et al.,* 145 S. C., 177, 143 S. E., 21, a similar provision in a contract bond was under consideration; and the Court held, according to the syllabus: "Where bond given to indemnify owners against any loss or damage arising from contractor's failure to perform contract, and providing that no right of action should accrue on it to or for use or benefit of any one other than obligee therein named, materialmen had no right of action on bond against surety; limitation of right of action to obligee being valid and not prohibited by statute or public policy."

It is insisted by the respondent, however, that, as it appears that the total loss sustained by the board was $3,641-.80, the verdict of $2,528.41, being within that figure, must stand. To sustain that claim, they offer a statement prepared by the architect, which contains two items which are not justified:

The unpaid claims against Powers for items of expense incurred prior to his abandonment, amounting to............................$2,528.41
and
Cost of items and labor necessary to complete building according to plans and specifications, but not actually expended because of lack of funds ...............................$1,121.58

Total ...............................$3,649.99
—reducing the $3,641.80 to $8.19.

Not a dollar of either of these items has been paid by the board and is not covered by the terms of the bond.

The trustees are confronted with another serious obstacle: They arrive at the balance due by Powers and the bond company by deducting:

From the total cost of the building............$14,601.80
The contract price...................... 10,960.00

$ 3,641.80

We do not think that the item of total cost has been established by proper evidence. There was introduced in evidence over the objection of the defendant a letter from the architect, Benson, to Morrison, as chairman of the trustees, purporting to give a statement of the cost of the work on the school building. The trial Judge overruled the objection that this letter was the merest hearsay and admitted it in evidence, apparently upon the theory that, it being the architect's duty to supervise the cost of construction, any report by him as to the cost was competent evidence. We are unable to follow this reasoning. There is no peculiar virtue about a written statement of whatever character, to take it out of the rule as to hearsay evidence. In 22 C. J., 207, it is said: "A statement otherwise objectionable as hearsay does not become competent because it has been reduced to writing. A written statement is equally inadmissible under the rule excluding hearsay evidence, where the form is judicial, as in the case of affidavits, answers to interrogatories, depositions, pleadings, whether filed in proceedings at law, or in equity or in special proceedings, or schedules filed by a bankrupt; where the form is official, as in the case of records kept by municipal or other public officers, or by private associations, certificates, church or hospital records, or the reports of public boards, bodies, or officials, or of officers of private corporations; where the form is mercantile, as in the case of accounts of sales or of work done, invoices, inventories, receipts, commercial re-

ports, or books of account; and where the form is more fugitive, as in the case of letters, postal cards, telegrams, memoranda," etc.

If more authority is needed for a rule so universally approved, a few of the cases in which this Court has excluded as hearsay the letters or other written declarations of third persons are: *Graff & Co. v. Caldwell*, 8 Rich., 129; *Stouffer v. Erwin*, 81 S. C., 541, 62 S. E., 843; *Trimble v. Carlisle*, 103 S. C., 411, 88 S. E., 28; *Carmichael v. Carmichael*, 110 S. C., 357, 96 S. E., 526.

We know of nothing in Benson's functions or his relations with the trustees which invested his report to them with any peculiar sanctity and entitled it to admission in evidence despite the usual rule. It would even appear that, when the letter was offered, Benson was actually present in the Court. It is, we think, fair to assume that the plaintiffs offered his testimony only by way of the hearsay letter because they realized that to subject Benson to cross-examination by the defendant Union Indemnity Company would be to demonstrate to the Court and the jury the utterly baseless character of the charge of fraud against that defendant in the procuring of the contract already discussed, in the making of which Benson played so large a part. Be that as it may, Benson was not put on the stand, and his testimony as to the cost of the building, for which he was the person primarily responsible, came into the case only in the shape of his letter to Morrison.

If the conclusion above stated be sustained, as it should be, that taking together the alleged agreement of October 11th, the receipt of the board for the $2,528.41 advance, and the check paid by the bond company with its recitals, the agreement of October 11th, represents the true agreement entered into on October 8th, and the board is bound by it.

The trial Judge was entirely correct in charging the fourth and fifth requests, as follows:

"4. The jury are instructed that by the terms of the bond here sued on by the plaintiffs and set out in their complaint the surety company was bound only to save the trustees harmless from pecuniary loss and not to protect the trustees against mere liability to loss; and, therefore, even if the subsequent agreement set up by the defendant as modifying the bond should be entirely disregarded, the plaintiffs cannot recover from the defendant surety company except for money actually paid out by them or pecuniary losses actually sustained by them as a result of the contractor's breach of his contract, and the plaintiffs·are not entitled to recover for money which they may have to pay or losses which they may hereafter sustain.

"5. The jury are instructed that the contract between the plaintiffs and the contractor, Powers, set out in the complaint does not make the plaintiffs liable for any bills contracted by Powers in the course of the work. Under the original bond sued on by the plaintiffs, the Union Indemnity Company cannot be held liable to Powers' creditors, but only to the plaintiffs. It, therefore, follows, and the jury are so instructed, that the Union Indemnity Company cannot be held liable under the bond for the various claims against Powers amounting to $2,528.41 which are said to be unpaid and which are included in the amount sued for by the trustees."

To these charges there appears to have been no exception. We think that they are correct with this explanation: If it should be adjudicated that the claims of third persons against Powers on account of labor or material supplied to him prior to his abandonment of the contract are valid claims against the trustees, or valid liens against the building, the defendant under its bond and under the agreement of Oct. 11 is liable therefor. If it should be so adjudicated or consented to by the defendants, and the claim, or any part thereof, should be paid by the defendant, or if it should be adjudicated to the contrary, the defendant,

in either event, will be entitled to a return of the check for $2,528.41 or the proceeds thereof, or of such amount as it may be adjudicated not liable for.

In any view of the case, the judgment which represented the alleged assumption of the outstanding claims against Powers, amounting to $2,528.41, is erroneous, and must be reversed.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with direction to enter a nonsuit in favor of the defendant under Rule 27.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER, CARTER, and BONHAM concur.