9597

TUTEN *ET AL.* v. McALHANEY *ET AL.*

(91 S. E. 328.)

1. DEEDS—EXECUTION—UNDUE INFLUENCE—BURDEN OF PROOF.—Where the condition of a grantor is such that the borderland between his weak-mindedness and his imbecility is a mere shadow, and a conveyance of valuable property is made by such grantor to a stranger in blood without any consideration whatsoever, the burden is on such stranger in blood, who has obtained such property by deed, to remove the presumption of undue influence.

2. DEEDS—EXECUTION—EVIDENCE.—Evidence *held* to show that a deed was secured by undue influence upon a grantor of doubtful mentality, without consideration.

3. DEEDS—EXECUTION—FRAUD.—Where a man gets a valuable tract of land for nothing from a person whose condition is such that the borderland between weak-mindedness and imbecility is a mere shadow, in the absence of a clear and satisfactory explanation, he is guilty of fraud.

4. VENDOR AND PURCHASER—NOTICE OF FRAUD—EVIDENCE.—Evidence *held* insufficient to show that one defendant, in purchasing from the other, had notice of fraud by which the other secured a deed, so as to put him on inquiry.

Before PRINCE, J., Hampton, February, 1916.    Affirmed.

Action by John Tuten and others against H. F. McAlhaney, L. R. Bishop and another. Judgment for plaintiffs against McAlhaney, and for Bishop, and McAlhaney appealed.

The decree of Judge Prince referred to is as follows:

This action came on to be heard before me at Hampton, S. C., at the Spring, 1916, term of Court. Certain issues of fact were, by consent of counsel, framed by the Court and submitted to a jury. Testimony on such issues, oral and documentary, was taken. The following are the issues which were submitted to the jury by the Court for the enlightenment of the Court, and the jury's findings on such issues:

"1. Was William M. Tuten, on August 14th, wholly mentally incapacitated to do business? A. No.

"2. If the said William M. Tuten was not wholly incapacitated on the 14th of August, 1914, was he at that time so incapacitated as to render him easily defrauded? A. Yes.

"3. Did H. F. McAlhaney procure the deed, dated August 14, 1914, either by fraud or fraudulent representation? A. No.

FOOTNOTE.—As to relation of undue influence to fraud, see notes in 18 A. & E. Ann. Cas. 412. What is undue influence and its effect, see notes in 2 L. R. A. 668, 4 L. R. A. 640, 738, 8 L. R. A. 261, 52 L. R. A. (N. S.) 480 to 487.

"4. What was the reasonable value for lands described in the deed at the date of the deed? A. $15 per acre.

"5. How much did H. F. McAlhaney agree to pay for the said lands, if anything? A. Nothing.

"6. How much did H. F. McAlhaney actually pay for the lands, if anything? A. Nothing.

"7. Did Bishop, at the time he took conveyance of part of the land from McAlhaney, have notice of any defect in McAlhaney's title? A. No.

"8. If Bishop did not have actual notice of any defect in McAlhaney's title, did he have knowledge of such defects as would have put any reasonable man on inquiry as to such defects? A. Yes."

Upon the rendition of the verdict of the jury, the case was fully argued before me by counsel for the plaintiffs and the defendants.

This is an action by the plaintiffs, as heirs at law of one William M. Tuten, who died on or about the 14th of October, 1914. The suit is to set aside an alleged deed made by William M. Tuten to the defendant, H. F. McAlhaney, on the 14th day of August, 1914, covering 296 acres of farm lands in Hampton county, and to set aside a deed made by the defendant, H. F. McAlhaney, to the defendant, L. R. Bishop, dated the 9th day of November, 1914, for a purported consideration of $1,100, covering 100 acres of the said tract of land.

It is alleged by the plaintiffs that, at the time of the making of the said deed by William M. Tuten, the said William M. Tuten was insane, and that both before and after the said 14th day of August, 1914, and up to the time of his death, the said William M. Tuten was in very feeble health, and was not of sound and disposing mind, being incapacitated for and incapable of attending to any business whatsoever. It is charged that both of the defendants, McAlhaney and Bishop, knew of the insanity and incapacity of Tuten. It is charged that the said deed from William M. Tuten to

McAlhaney was procured by fraud, and that no considera-
tion for said deed was paid, although the said deed expressed
a consideration of $3,000.   It is charged that Bishop knew
of the existence of this state of affairs, or had such knowl-
edge or information as would put him upon inquiry as to
any alleged defects in the title of McAlhaney.   It is further
alleged in the complaint that the defendant, L. R. Bishop,
and the defendant, H. F. McAlhaney, conspired together,
and that the resultant transactions of such conspiracy were
the direct results of a fraudulent scheme on the part of the
said defendants.

The defendant, H. F. McAlhaney, denies all of the mate-
rial allegations of the complaint, and by way of a further
defense alleges that he purchased the said land from the said
William M. Tuten, deceased, for a valuable consideration,
which consideration, it is alleged in the answer, was fully
paid by the defendant.   The defendant, L. R. Bishop, denies
all of the material allegations of the complaint, and alleges
as a further defense that he is the owner in fee simple and
in possession of 100 acres of land mentioned in the com-
plaint and described as follows: "Bounded on the north by
lands of John Tuten, or Rock Spring Public Road, separat-
ing the said tract of land from John Tuten and others; on the
east by lands of C. H. Cummings; on the south by lands of
T. H. Tuten; and on the west by lands of H. F. McAlhaney;
the same being a portion of a tract of two hundred and
ninety-six acres purchased by H. F. McAlhaney from
William M. Tuten, August 14, 1914"—and that the defend-
ant, McAlhaney, on the 9th day of November, 1914, made,
executed and delivered to the defendant, L. R. Bishop, a
deed of conveyance to the said 100 acres of land above
described; and the defendant, Bishop, further alleges that
he did not have any notice whatsoever of any mental inca-
pacity on the part of the said William M. Tuten.

At the conclusion of the hearing before me, I directed the
parties litigant to have prepared and transmitted to me a

copy of all of the testimony, both oral and documentary, for my consideration. After careful consideration and mature deliberation, I find and conclude that while William M. Tuten, on the 14th day of August, 1914, was not an out-and-out imbecile or idiot, still he was extremely weak-minded, decrepid and, in consideration of his state of mind, the borderland between his weak-mindedness and his imbecility or idiocy was but a shadow. This Court is satisfied that he was induced by a stranger in blood, who was a strong-minded man, to execute the deed in question, for which not one dollar was paid, which transferred from him the control and possession of valuable farming lands which were worth, as the testimony shows, $4,440. This Court holds that where the condition of a grantor is such that the borderland between his weak-mindedness and his imbecility is a mere shadow, and a conveyance of valuable property is made by such grantor to a stranger in blood without any consideration whatsoever, that the burden is on such stranger in blood who has obtained such property by deed to remove the presumption of undue influence.

This Court holds that William M. Tuten did an unnatural thing, and while he was in a weak-minded state. In this connection it should be noted that grantor's quarrel was only with the conduct of two out of five of his sons. There is absolutely no testimony that his daughter's conduct was not all that the father could expect or ever wish, yet we find him exacting from her an agreement to support him for life in consideration of the conveyance to her of only 50 acres.

Where a man gets a valuable tract of land for nothing from a person whose condition is such that the borderland is a mere shadow, in the absence of a clear and satisfactory explanation, he is guilty of fraud. Such being the law and the testimony clearly showing that such was the mental condition of William M. Tuten on the 14th day of August, 1914, and that this $4,440 tract of land

was secured by McAlhaney, who was a stranger in blood, without any consideration whatsoever, I unhesitatingly set aside the deed from William M. Tuten to H. F. McAlhaney, bearing date the 14th of August, 1914, covering 296 acres of land, described as follows, to wit: "All of that certain piece, parcel or tract of land situate, lying and being in Hampton county, South Carolina, containing two hundred and ninety-six acres, more or less, and bounded on the north by lands of R. L. McAlhaney, William Tuten and John Tuten; on the east by lands of C. H. Cummings; on the south by lands of T. H. Tuten and John Tuten; and on the west by lands of R. H. Sinclair"—and I authorize and direct the delivery up and cancellation of record the deed in question from William M. Tuten to H. F. McAlhaney.

Having disposed of the deed to McAlhaney, it now remains for the Court to dispose of the contention raised by the pleadings and testimony as to the defendant, L. R. Bishop, and his claim of 100 acres of land, which he states he purchased from McAlhaney without knowledge or notice of any defects in the title of McAlhaney, or without knowledge or notice of any facts sufficient to put him upon inquiry as to such defects in the title of McAlhaney. McAlhaney married the sister of Bishop. In July or August, Bishop states he was at McAlhaney's place on a visit. Bishop claims that he knew of William M. Tuten's physical illness, and that after the death of the said William M. Tuten he, the defendant, Bishop, knew of a contest between the Tutens and McAlhaney as to the crops growing on the identical land in question in this action which is claimed by the defendant, Bishop. Bishop's father on the witness stand testified that he knew of a contest between the Tutens and McAlhaney as to the land in question. Bishop states that he paid McAlhaney on delivery of the deed the sum of $420, and that the balance of the purchase money, to wit, the difference between $420 and $1,100, the alleged agreed price, was secured to the said McAlhaney by a mortgage

over the 100 acres so purchased. The testimony shows that the Tutens were in possession of the property up to the death of William M. Tuten and for some time thereafter. Before the transaction between Bishop and McAlhaney was closed, Bishop visited the neighborhood, and the land contest was the subject of common report throughout the neighborhood, according to the testimony of Bishop's father. On the trial of the case, I ruled that where fraud was shown in the inception of a transaction, the purchaser from fraudulent grantee did not have the burden of proof, or showing the transaction to be *bona fide,* and that the burden of proof that the purchaser from the fraudulent grantee bought with notice or knowledge of the defects in his title was upon those attacking such transaction as fraudulent to show notice or knowledge sufficient to put a reasonable man upon inquiry as to the condition of the title of the person from whom he bought.

This Court does not think that the evidence above enumerated is sufficient in the respect named to show that Bishop took with notice or knowledge of such defects in the title of McAlhaney, and does not show notice or knowledge sufficient to put him upon inquiry as to the condition of McAlhaney's title; and in this respect I do not agree with the finding of the jury, to the effect that Bishop had knowledge or notice sufficient to put him upon inquiry as to the condition of the title of McAlhaney; and, therefore, I refuse to set aside the said conveyance. It appears to the Court that Bishop has not paid the difference between the price he agreed to pay, to wit, $1,100, and $420, to McAlhaney or any one else. It also appears that McAlhaney holds a mortgage over the said 100 acres of land for the balance of such purchase price. It was testified to, and I find that Bishop has paid the interest for one year on the said mortgage. I, therefore, hold that the balance of the purchase price of the said land should be paid to the administrator of the estate

of William M. Tuten by the said Bishop, and it is ordered that the defendant, H. F. McAlhaney, forthwith, upon the service of a copy of this order upon him, do deliver to Reddin Tuten, the administrator of the estate of William M. Tuten, or his successors in office or his attorney, the note and mortgage executed to him by the said defendant, L. R. Bishop, and that the title to the said note and mortgage be, and the same is hereby, vested in the administrator of the estate of William M. Tuten.

It follows from what I have hereinbefore found to be the facts and held to be the law applicable thereto that the defendant, H. F. McAlhaney has wrongfully collected from his codefendant, L. R. Bishop, the sum of $420, the cash payment on the land he sold to Bishop on the 9th day of November, 1914, and the further sum of $47.60, one year's interest on the purchase-money mortgage of $680, and that said defendant should account to and pay to the said Reddin Tuten, as administrator of William M. Tuten, both of said sums of money with interest on each of said sums from the date it was wrongfully received by the said McAlhaney. Any party to this cause is hereby granted leave to apply at the foot of this decree to this Court for such additional order as may be necessary to enforce their several rights as herein fixed. Let the defendant, H. F. McAlhaney, pay the costs of this proceeding. Let a certified copy of this decree be forthwith personally served upon each of the defendants. And it is so ordered, adjudged, and decreed.

*Messrs. Randolph Murdaugh* and *J. W. Manuel,* for appellant. The latter submits: 1. *Ordinarily a man may dispose of his property as he pleases:* 84 S. E. 879. 2. *Capacity sufficient to understand the subject of the contract, its probable consequence and nature, is sufficient as far as the question of capacity is concerned:* 22 Cyc. 1206; 71 S. E. 376; 81 S. E. 344; 88 S. E. 299, 1013. 3. *A seal*

*imports a consideration, and, in the absence of fraud, whether or not the consideration named, or any consideration, was paid cannot be inquired into:* 22 S. E. 412; 31 S. E. 321; 35 S. E. 435; 38 S. E. 218.    4. *Where it is sought to set aside a deed on the ground of undue influence it must clearly appear that the free agency of the grantor was destroyed by the grantee; that the act of execution was not free and voluntary, but was caused·by the coercion of the grantee:* 5 Strob. Law, 192; 24 U. S. 125 (note) ; 13 Cyc. 585; 118 U. S. 127, 6 S. Ct. 1001; 71 S. E. 378, 379; 88 S. E. 1013.    5. *Undue influence is to be proved, not presumed, unless the parties stand in a relation that raises the presumption:* 71 S. E. 379.    *The burden of establishing that the deed from William M. Tuten to H. F. McAlhaney was obtained by undue influence is upon the heirs of William M. Tuten:* 10 S. C. 440; 22 S. E. 412.

*Messrs. E. F. Warren* and *George Warren,* for respondent.

February 9, 1917.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

"This is an action brought by the heirs at law of William M. Tuten, deceased, to set aside a deed made by him to H. F. McAlhaney on August 14, 1914, on the grounds of incapacity of the grantor, fraud and misrepresentation on the part of the grantee and want of consideration.    The action sought to set aside, also, a deed made by H. F. McAlhaney to L. R. Bishop on November 9, 1914, covering 100 acres of the premises included in deed from Tuten to McAlhaney on the alleged ground that McAlhaney and Bishop conspired to defraud the plaintiffs.    The case was tried at the

February term, Common Pleas, Hampton county, S. C., before Judge George E. Prince and a jury."

Judge Prince then heard the case on the testimony as heard by the jury and arguments of counsel. He gave judgment in favor of the plaintiffs, setting aside the deed of Tuten to McAlhaney, but affirmed the deed from McAlhaney to Bishop. He ordered McAlhaney, however, to pay to the administrator of William. M. Tuten the money paid to him by Bishop and to transfer to said administrator the security for the unpaid portion of the purchase money. From the decree, McAlhaney appealed.

There are seven exceptions, but they raised questions of fact. The Constitution of the State provides as to this Court (article V, section 4):

"And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law, except in chancery cases where the facts are settled by a jury and the verdict not set aside."

In this case the verdict was not set aside. The only conflict is as to the finding of fraud, and, as to that finding, the decree appealed from is affirmed, for the reasons stated by Judge Prince.

The judgment is affirmed.